ANGELA KRISTEN CROWELL,

        Plaintiff,

  v.                                                Case No. 20-cv-0343-bhl

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

        Defendant.

## ORDER AND DECISION

Plaintiff Angela Kristen Crowell seeks the summary judgment reversal and remand of an administrative law judge decision denying her claim for Supplemental Security Income (SSI) benefits under the Social Security Act. For the reasons set forth below, the decision is affirmed and Crowell's summary judgment motion denied.

## PROCEDURAL BACKGROUND

Crowell applied for SSI on February 11, 2010, alleging disability beginning August 1, 2007. (ECF No. 9-1 at 71.) The claim was denied initially and upon reconsideration. (*Id.*) Crowell then requested a hearing before an administrative law judge (ALJ), and a hearing was held on June 22, 2011. (*Id.*) The ALJ denied Crowell's claim in a written decision dated August 4, 2011. (*Id.* at 71-82.) Crowell appealed the decision to the federal district court, where the decision was voluntarily remanded. (ECF No. 12 at 3.) On June 6, 2014, a remand hearing was held during which Crowell revised her alleged disability onset date to January 1, 2012. (*Id.*) Crowell's claims were again denied, and the Appeals Council (AC) declined review. (ECF No. 9-4 at 90; ECF No. 12 at 3.) Crowell appealed the decision to the federal district court for the second time, and the Commissioner again agreed to a remand. (ECF No. 12 at 3.)

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for former Commission Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

After the agreed-remand, on September 17, 2017, the AC ordered a third hearing and incorporated a newly asserted 2015 SSI claim. (ECF No. 9-16 at 99-101.) The AC instructed the ALJ to issue a new decision that evaluated Crowell's alleged symptoms and provide a rationale in accordance with the disability regulations. (*Id.* at 100.) The ALJ was also directed to consider Crowell's maximum residual functional capacity (RFC) during the entire period at issue and provide a rationale with specific references to evidence of the record in support of assessed limitations while evaluating and explaining the weight given to opinion evidence. (*Id.*) The AC also made clear the ALJ should obtain supplemental vocational expert evidence, if warranted. (*Id.*; ECF No. 9-15 at 38.)

A third administrative hearing was held on April 17, 2018. (ECF No. 9-15 at 38.) At the hearing, Crowell was represented by counsel, and a vocational expert testified. (*Id.* at 71.) The ALJ issued an unfavorable decision on June 12, 2018, finding Crowell "not disabled." (ECF No. 9-15 at 56.) The AC denied review on January 27, 2020. (ECF No. 12 at 5.) Crowell then returned to this court for a third time on March 2, 2020. (ECF No. 1.)

## FACTUAL BACKGROUND

At the time of the hearing, Crowell was 39 years old and had been living with friends for the past week. For the preceding five years, Crowell had lived with her boyfriend. (ECF No. 9-15 at 44.) Crowell alleged that since January 1, 2012, she had been unable to work due to ADHD, social anxiety, fibromyalgia, bipolar disorder, borderline personality disorder, chronic pain, panic attacks, arthritis, shoulder pain, back pain, OCD, anxiety, depression, insomnia, asthma, and chronic obstructive pulmonary disease. (*Id.*) At the hearing, Crowell testified that she read books for about two hours a day, watched television for about two hours a day, and spent time on Facebook for six hours a day trying to win books. (ECF No. 9-15 at 95-100.) The record also reflects that Crowell cared for her boyfriend's autistic son, babysat several days a week for three to four hours a day, attended concerts, traveled to Madison, and went camping and boating. (ECF No. 9-20 at 51, 59; ECF No. 9-21 at 14.)

Crowell contended she is primarily unable to work due to her mental conditions. The ALJ noted that Crowell had longstanding mental health symptoms that dated back to her teenage years, "including fluctuating moods of euthymia and depression, anxiousness, stress, excessive worrying, social phobia, anger, irritability, obsessive thoughts . . . occasional suicidal ideation, crying spells, paranoia, panic attacks, control issues, feelings of guilt and worthless [sic], as well

as difficulty focusing and following directions." (ECF No. 9-15 at 46.) Crowell had been diagnosed with "affective disorder (bipolar disorder, depression), anxiety disorder (OCD, panic disorder) and avoidant personality disorder" and was treated with medication. (*Id.*)

In his decision, the ALJ determined Crowell's fibromyalgia; left shoulder disorders, status post surgical correction; depressive disorder and anxiety disorder constituted severe impairments. (ECF No. 9-15 at 41.) But the ALJ found that Crowell was not disabled because her residual functional capacity left her eligible for a wide array of jobs in the national economy.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted). That said, an ALJ is not permitted to simply ignore contradictory evidence. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In reviewing the entire record, this Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Crowell offers four bases for reversal or remand. First, she contends her bipolar disorder was not found severe or non-severe or properly considered in the RFC determination. Second, she argues that the hypothetical provided to the vocational expert failed to properly account for her moderate limitation in concentration, persistence, or pace. Third, Crowell contends the ALJ's opinion lacked substantial evidence or was legally erroneous. Fourth, she argues the vocational

expert did not address local numbers. None of these reasons warrants reversal or remand, so the Acting Commissioner's decision will be affirmed.

I. **The ALJ Reviewed the Medical Evidence and Sufficiently Addressed Crowell's Bipolar Disorder.**

Crowell contends that her bipolar disorder "was not found either a severe or non-severe impairment" and "was not considered in the RFC assessment." (ECF No. 12 at 8.) This misstates the record. The ALJ specifically referred to Crowell's bipolar disorder at least three times, and, more importantly, discussed the symptoms associated with Crowell's bipolar disorder. (ECF No. 9-15 at 44, 46-47.) Crowell states she experienced mood swings, depression, mania, questionable dating decisions, panic attacks, crying spells, aggression, irritability, and the inability to safely parent her own six children. (ECF 12 at 8.) The ALJ discussed Crowell's mood swings, anger outbursts, depression, panic attacks, crying spells and irritability. (ECF No. 9-15 at 43, 49-51.) The ALJ thus not only mentioned bipolar disorder but also considered the symptoms related to the condition. *See Stetter v. Saul*, No. 18-C-1100, 2019 WL 4599932, at *5 (E.D. Wis. Sept. 23, 2019) ("Although the ALJ did not mention bipolar disorder by name when analyzing the medical evidence, he sufficiently considered the symptoms related to that condition.").

Crowell argues that a number of her treating providers diagnosed her with bipolar disorder and references numerous citations to the transcript in both her opening brief and again on reply. (*See* ECF No. 12 at 8; ECF No. 21 at 3 (referencing Tr. at 292-93, 295, 302, 375, 404, 407, 450, 452, 519, 772, 774, 791, 837, 845, 850, 905, 979, 989, 1531, 1554, 1628)). A review of this cited evidence reveals that it is largely immaterial to Crowell's argument:

- Tr. 292: On January 2, 2012, Patricia Michels, APNP, filled out a fibromyalgia impairment questionnaire and noted that Crowell had a "Hx" (history) of bipolar, depression that may affect Crowell. (ECF No. 9-2 at 139-40.)
- Tr. 293: In a letter to Crowell's attorneys dated January 2, 2012, APNP Michels reported that Crowell was seen by her on two occasions (both before the alleged onset date) for "chronic generalized pain, likely fibromyalgia" and later noted that she has a comorbid condition of bipolar disorder and is seeing a psychiatrist. APNP Michels wrote: "At this time, I am not able to fully assess what her functional limitations may be since we have not been actively treating her for this condition. I have recommended to Ms. Crowell that she establish and remain under the care of her psychiatrist in order

to get her bipolar disorder under optimal control before proceeding onward with treatment for fibromyalgia symptoms." (ECF No. 9-2 at 141.)

- Tr. 295: During a 12/29/2011 visit, APNP Michels reported that Crowell's depression and bipolar disorder were "currently being managed at the Health Care Center." (ECF No. 9-2 at 141.)

- Tr. 302: A 11/24/2009 intake interview with a consulting psychiatrist at Dodge County Human Services and Health Department states that Crowell "is seeking a psychiatric evaluation and mental health counseling to address her [reported] bipolar disorder, anxiety disorder and depression." (ECF No. 9-3 at 4.) The intake reports "Dr. Stelle at the Brownsville Clinic is presently treating her for these symptoms. Angela reports being on the medications for the last two month, and she find them to be helpful." (*Id.*) The provisional diagnoses include Bipolar 1 Disorder. (*Id.* at 6.)

- Tr. 375: On June 3, 2010, Crowell presented herself for a Mental Status Examination with Richard J. Ertl, Ph.D. (*Id.* at 74.) Dr. Etl diagnosed her with bipolar II disorder (*Id.* at 79.)

- Tr. 404: On July 14, 2010, Gary F. Steele, M.D., a family medicine practitioner wrote "I am writing in regard to Angela Crowell, who came concerning disability benefits that have been denied. This lady has diagnoses of bipolar disorder, personality disorder, and chronic pain syndrome. It is my opinion that she is unable to hold a job." (*Id.* at 108.)

- Tr. 407: On July 14, 2010, Dr. Steele wrote "[Crowell] is requesting a note to her attorney stating that I don't think she can work. She does have known chronic pain syndrome with probable bipolar disorder . . ." (*Id.* at 111.) Dr. Steele advised Crowell that she will have to see a psychiatrist for further evaluation for her appeal of the denial of disability benefits. (*Id.*)

- Tr. 450: On March 22, 2011, Crowell presented to Dr. Steele due to engaging in unprotected intercourse and discussed she was unable to take lithium. Dr. Steele noted in his assessment "known bipolar disorder." (*Id.* at 154.)

- Tr. 452: On December 29, 2010, Gary F. Steele, M.D. noted that "[Crowell] had been placed on a waiting list for a psychiatric evaluation." (*Id.* at 156.)

- Tr. 519: On December 29, 2011, Patricia Michels, APNP opined that Crowell's "psychiatric status is the priority and that she needs to be established and under the care ongoing of a psychiatrist." (ECF No. 9-4 at 56.)
- Tr. 772 is duplicative of Tr. 450.
- Tr. 774 is duplicate of Tr. 452.
- Tr. 791: On August 13, 2012, Crowell returned to APNP Michels for "management of generalized pain due to fibromyalgia." (ECF No. 9-6 at 31.) APNP Michels noted that "Dr. Kowalke, her psychiatrist, has decreased her Cymbalta back down to 30 mg per day." (*Id.*)
- Tr. 837: On September 14, 2012, Crowell was referred to Victor Diaz, M.D. for evaluation of possible seizures. (ECF No. 9-7 at 38.) As part of the evaluation, Dr. Diaz noted that Crowell had a prior medical history of bipolar, assessed her with bipolar disorder, unspecified, and encouraged her to continue her therapies and evaluation by psychiatrist. (*Id.* at 39.)
- Tr. 845: On October 19, 2012, Crowell returned to Patricia Michels, APNP. (*Id.* at 46.) Crowell informed Michels that she left the health care center where had had been seen by several different psychiatrists, including Dr. Kowalke, who was no longer with the center, because she wanted to be off of all of her psychiatric medications. (*Id.*) APNP Michels "encouraged [Crowell] to establish with a psychiatrist who can best manage her psychiatric illnesses." (*Id.* at 47.)
- Tr. 850 is duplicative of Tr. 791.
- Tr. 905 is duplicative of Tr. 450.
- Tr. 979: On February 19, 2014, Crowell saw Douglas C. Wonder, D.O. who noted "patient presents here as a new patient for MED check." (ECF No. 9-14 at 33.) Dr. Wonder noted past medical history includes "bipolar disorder" and his impressions included bipolar disorder (*Id.* at 34.)
- Tr. 989 is duplicative of Tr. 452.
- Tr. 1531: On October 9, 2014, Crowell visited Bridgett Hoffman, NP, due to cold symptoms and an upper respiratory infection. (ECF No. 9-18 at 95.) NP Hoffman listed bipolar disorder as one of Crowell's current problems. (*Id.*)

- Tr. 1554: Bridget Hoffman, NP noted that Crowell had been using Straterra from her psychiatrist for bipolar/fatigue. (*Id.* at 118.) Crowell was almost out of this medication and had not been able to reach psychiatrist. (*Id.*)
- Tr. 1628: K. Ludwikowski M.S., APNP, checked Bipolar on a checklist but also noted on this record that Crowell's mood was euthymic and stable. (ECF 9-19 at 11)

In sum, a review of each and every one of Crowell's cites to the record confirms they do not support her argument. Some are duplicative. Others merely reference a diagnosis of bipolar disorder or note that Crowell was herself reporting such a diagnosis. Only one provider, Richard J. Ertl, Ph.D., examined Crowell before the alleged onset date (on June 3, 2010) and diagnosed bipolar II disorder. But the ALJ explained why he gave Dr. Ertl's opinion little weight. (ECF No. 9-15 at 51.) A remand is therefore not warranted.

Crowell next contends that "even the State Agency found her [b]ipolar disorder was a severe impairment." (ECF No. 12 at 8). The state agency, however, found Crowell's bipolar disorder was severe in 2010 and 2011, which is before Crowell's alleged onset date of January 2012. Although the ALJ considered this evidence, it is not surprising that he did not find it particularly persuasive or probative. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) ("Because this assessment and the anticipated date of [the claimant's] return to work both predated the alleged onset of [the claimant's] disability . . ., we do not find the assessment particularly probative of [the claimant's] condition during the adjudicative period."). As for the state agency reports in 2013 and 2016, the state agency doctors did not diagnose Crowell with bipolar disorder, nor did they opine that Crowell's bipolar disorder was a severe impairment. (*See, e.g.,* ECF No. 9-5 at 30 (Esther Lefevre Ph.D. noting that Crowell had "improved moods in therapy, improved sleep w[ith] med[ication]s, shows significant improvement w[ith] an emotional support animal"); ECF No. 9-5 at 45 (Philip Rattan, Ph.D.); ECF No. 9-16 at 89 (Stacey Fiore Psy.D.)).

As discussed by the ALJ, in June of 2017, Crowell established care with a new psychiatrist. During a June 6, 2017, appointment, Crowell denied crying, sadness, depression, anxiety and panic, but stated she was "more angry," had outbursts at her boyfriend, and mood swings. (ECF No. 9-20 at 59.) She also denied pain except for "every day normal life pain." (*Id.*) During a November 7, 2017 appointment, Crowell again denied crying, sadness and depression. (ECF No. 9-20 at 55.) She said she does go through highs and lows. (*Id.*) Her diagnoses did not include bipolar disorder. (*Id.* at 52, 57, 60-61.) Thus, Crowell's arguments regarding an alleged bipolar

disorder look more like a request to reweigh the evidence, an invitation the Court must decline. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ."). Accordingly, Crowell's argument lacks merit.

## II. The RFC Sufficiently Addressed Crowell's Limitations in Concentration, Persistence or Pace.

Crowell next challenges the ALJ's assessment of her RFC and argues neither the RFC nor the hypothetical provided to the vocational expert properly accounted for Crowell's moderate limitations in concentration, persistence or pace. A claimant's RFC specifies the most that a claimant can do despite the physical or mental limitations imposed by her impairments. 20 C.F.R. §404.1545(a)(1). An ALJ assesses a claimant's RFC "based on all relevant evidence" in the case record, including severe and non-severe impairments as well as medical and non-medical evidence. *Id.*; §404.1545(e). The ALJ's hypothetical question to the vocational expert must then incorporate all of the limitations included in the RFC. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

Crowell argues that the ALJ erred in finding that she had moderate difficulties in her ability to sustain concentration, persistence or pace (CPP) while failing to include those limitations in the residual capacity evaluation or questions to the vocational expert. It is well-established that "both the hypothetical posed to the VE [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical records." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). And, the Seventh Circuit has found fault when the ALJ translates a finding of moderate limitations in CPP into an RFC limiting the plaintiff to simple, routine and repetitive tasks. *See O'Connor-Spinner*, 627 F.3d at 620. An ALJ, however, "may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019).

In fashioning the RFC, the ALJ gave the greatest weight to the October 2013 opinion of Roger Rattan, Ph.D. and the October 2016 opinion of Stacey Fiore Psy.D. (ECF No. 9-15 at 48.) Dr. Rattan opined that Crowell sustained limitations in concentration and persistence. (ECF No. 9-5 at 43.) Dr. Rattan stated that Crowell's ability to carry out very short and simple instructions, ability to sustain an ordinary routine without special supervision and ability to make simple work-related decisions was not significantly limited. (*Id.*) Dr. Rattan further opined that Crowell was moderately limited in her ability to carry out detailed instructions, ability to maintain attention and concentration for an extended period, ability to perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances, and ability to work in coordination with or in proximity to others without being distracted by them. (*Id.*) Dr. Fiore's opinions were similar. She opined that Crowell "can understand, remember and carry out simple and detailed but not complex instructions, make simple decisions, attend and concentrate for two hours at a time on simple and detailed but not complex [tasks], interact adequately with co-workers and supervisors, handle frequent contact with the public, and respond appropriately to changes in a work setting. (ECF No. 9-16 at 88.)

The ALJ's RFC accommodated both of these opinions, limiting Crowell to simple, routine, and repetitive tasks; simple work-related decisions; occasional workplace changes; and occasional interaction with the public, co-workers and supervisors. (ECF No. 9-15 at 43.) The ALJ included an additional limitation of no fast-paced work. (*Id.*) It was not error for the ALJ to give the greatest weight to the most restrictive opinions of the psychological consultants for the state disability agency, Drs. Rattan and Fiore, who translated their own findings that the claimant may have moderate difficulties in CPP into a determination that the claimant can perform simple, routine, and repetitive tasks. *See Gonzalez v. Berryhill*, No. 17-C-670, 2018 WL 4562541, at *7 (E.D. Wis. Set. 24, 2018) ("[W]here a medical source, whose opinion the ALJ reasonably accords great weight, translates his own findings that the claimant may have moderate difficulties in CPP into an ultimate conclusion that the claimant can nevertheless perform simple, routine, and repetitive work, the ALJ does not err.").

Crowell next argues that because the ALJ included additional limitations, the ALJ did not "adopt" Dr. Rattan's opinion. The ALJ's additional limitation does not constitute error; if anything, the additional limitation further helped to inform the RFC. *See Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020) ("But the ALJ here made no error because he posed a hypothetical with a more restrictive limitation . . . than what was supported by the medical record"); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) ("Indeed, the hypothetical that the ALJ posed to the vocational expert contained limitations that were more restrictive than the functional work-related limitations identified by the state-agency doctors.").

Crowell points to medical evidence submitted by Bridget Hoffman, APNP, that Crowell "would be off task 15 percent of the time due to being distracted by others . . . or changes in the work setting." (ECF No. 12 at 16.) Crowell fails to mention, however, that this healthcare provider "found" only none to mild limitations in maintaining concentration, persistence or pace. (ECF No.

9-15 at 52; ECF No. 9-20 at 41.) The ALJ noted that "on the one hand, [APNP Hoffman] states that the claimant has none-to-mildly restricted concentration, persistence and pace; yet, on the other hand, she marks off that the claimant's symptoms would often interfere with her attention and concentration, and she would be off task 25% of the workday." (ECF No. 9-15 at 52-53.) It is thus hardly surprising the ALJ concluded APNP Hoffman's opinion was internally inconsistent and discounted it. Crowell's claim that the ALJ should have relied on APNP Hoffman when this provider opined that Crowell was at most only mildly limited in CPP is nonsensical.

Crowell also argues that she "consistently reported moderate to severe issue[s] with concentration." (ECF No. 12 at 16.) But the ALJ determined that Crowell was moderately limited in her ability to concentrate, persist or maintain pace. (ECF No. 9-15 at 42.) The ALJ also cited Crowell's testimony confirming her ability to maintain focus while reading and using Facebook. (*Id.* at 42-43.) Further, the record confirmed that Crowell was able to babysit, drive, prepare meals, watch TV, play games, use the internet and handle her own medical care. (*Id.* at 43.) The ALJ additionally noted that the record failed to show any mention of distractibility and an inability to complete testing that assesses concentration and attention. (*Id.*) Crowell's argument is thus unavailing.

### III. The ALJ's RFC Was Supported by Substantial Evidence.

Crowell acknowledges that the ALJ did "address *all 10 medical opinions*" but argues that the ALJ failed to properly consider that medical evidence. (ECF No. 12 at 18) (emphasis in original). As instructed by the AC, the ALJ thoroughly evaluated the medical opinion evidence. (ECF No. 9-15 at 47-54.) In doing so, he analyzed medical opinions rendered prior to the amended alleged onset date of January 1, 2012, including the opinions of Gary Steele M.D.; Tammy Pierner, M.D.; Mary Wafle, LCSW; Roger Rattan, Ph.D.; and Esther Lefevre, Ph.D. The ALJ analyzed the opinion evidence of Susan Donahoo, Psy.D. who opined that Crowell had no greater than mild mental functional limitations. (ECF No. 9-16 at 59.) He analyzed the October 2013 reconsideration opinion of Dr. Rattan, an October 2016 reconsideration opinion of Dr. Fiore, treatment notes of Kathleen Ludwikowski, APNP, the opinion of Lesley Baird Psy.D., and a completed checklist submitted by Bridget Hoffman, APNP. The ALJ reasonably weighed the conflicting opinion evidence and provided appropriate reasons for giving greater weight to some opinions and lesser weight to others. Particularly, the ALJ explained why he gave greater weight to the opinions of Drs. Fiore and Rattan and lesser weight to other opinions such as those from

Drs. Lefevre and Donahoo.  At the risk of stating the obvious, an ALJ does not commit legal error by weighing the evidence; that is precisely the ALJ's function.  *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts . . . is exactly what the ALJ is required to do.").

Crowell then turns her attention to evidence she contends was ignored in the ALJ's decision.  Crowell alleges that the ALJ ignored evidence regarding her anger management, bouts of sadness and anxiety.  As examples, Crowell cites evidence from April of 2012, where she a progress noted stated that she "has times of crying with sadness" but "complains more … of anger.  She feels that she will be become irritable very quickly and will 'snap.'  Describes lashing out at others verbally.  She also will hit furniture in her home." (ECF No. 9-6 at 2.)  In June of 2012, Crowell had "outbursts of anger, primarily related to her relationship." (*Id.* at 26.)  In September of 2012, Crowell had an anxiety attack.  (*Id.* at 34.)  The ALJ did not ignore this evidence.  To the contrary, the ALJ noted that the record documented Crowell's anxiousness, social phobia, anger, irritability, crying spells, panic attacks and cited Exhibit 29F (one of exhibits Crowell alleges the ALJ neglected) as well as other exhibits.  (ECF No. 9-15 at 46.)  The ALJ also noted, however, that in June 2017, Crowell denied crying sadness, depression, anxiety or panic attacks, but stated she was angrier.  (*Id.* at 47.)  At her November 2017 session, Crowell again denied crying, sadness or depression.  (ECF No. 9-20 at 50.)

While Crowell contends the ALJ overlooked records of anxiety, the ALJ affirmatively found Crowell's anxiety disorder to be a severe impairment.  (ECF 9-15 at 41.)  And the ALJ discussed Crowell's anxiety numerous times.  An ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation omitted).  The Court notes that this is certainly the case when an ALJ is tasked with reviewing an extensive record with medical evidence spanning over eight years.

ALJs are responsible for assessing a claimant's RFC "based on all of the relevant medical evidence and other evidence."  20 C.F.R. §404.1545(a)(3), 404.1546(c); *see Fanta v. Saul*, 848 F App'x 655, 658 (7th Cir. 2021) (emphasizing that an ALJ has the final responsibility for determining a claimant's RFC and is not required to adopt any doctor's particular opinion.)  "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The key question is

whether the ALJ ignored evidence that would have reshaped the RFC analysis. Here, there is nothing to suggest that any of the cited evidence or incidents require a more restrictive RFC than the ALJ already provided.

An ALJ is required to weigh conflicting evidence from medical experts and others and fashion an RFC that reaches a logical conclusion based on substantial evidence. Here, the ALJ completed a detailed analysis of the objective medical evidence, other medical opinions of record, treatment history, history of improvement, and claimant's daily activities. He then found that the state medical consultants' opinions generally comported with this history, while the opinions of several of Crowell's treating health care providers did not. The ALJ explained why he discounted the opinions that he did. That is more than enough to meet the "substantial evidence" standard. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## IV. The ALJ Did Not Err in Relying on the Vocational Expert's National Job Numbers.

Crowell's final argument is that the decision should be remanded because the vocational expert did not provide local job numbers. At the hearing, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Crowell's age, education, work experience, and RFC. (ECF No. 9-15 at 55.) The vocational expert testified that given all of these factors, such an individual would be able to perform the requirements of representative occupations that included the following: Housekeeping/cleaning (DOT 323.687-014) (443,800 jobs available); Assembler (DOT Code 739.687-086) (14,200 available jobs); Inspector (DOT Code 669.687-014) (5,600 available jobs); Hand packager (DOT Code 559.687-014 (9,200 available jobs); and Electronic assembler/mounter (DOT Code 725.684-018) (4,300 available jobs) and more. (*Id.* at 55-56.) The vocational expert provided all jobs numbers nationally. (*Id.*)

During the hearing Crowell's counsel did not object to this testimony. (*Id.* at 124-127.) Consequently, Crowell has forfeited this argument. Even if she hadn't, her argument is also meritless because her reliance on *Browning v. Colvin*, 766 F.3d 708 (7th Cir. 2014) is unavailing. In *Browning*, the plaintiff had used a wheelchair due to her defective leg, sometimes used crutches, was severely obese, lived with her mother and was intellectually disabled with an IQ under 70. On appeal, the Seventh Circuit noted that the plaintiff's disability prevented her from moving and therefore local job numbers should have been considered. *Id.* at 708. Crowell is not similarly situated. During a therapy session dated April 17, 2017, Crowell stated she was considering moving to Fond du Lac "because she will have more resources available to her." (ECF No. 9-22

at 52.)  Crowell acknowledged in February 2017 that she was babysitting a 10-month-old in her home and prior to that, babysat for several days a week for three to four hours a day.  (ECF No. 9-15 at 45.)  There are no allegations that Crowell is intellectually disabled and in fact, she attained her GED.  Crowell attended concerts, went boating, and traveled to Madison with a friend (ECF No. 9-20 at 51; ECF No. 9-22 at 65.)   Crowell is not "immobile."  Accordingly, the ALJ did not err in relying on national job numbers.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Crowell's motion, seeking reversal of the defendant's decision which found Crowell to be not disabled after January 1, 2012 (ECF No. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Crowell's motion seeking a remand of the case for an administrative hearing before an alternative ALJ (ECF No. 12) is **DENIED**.

This case is **DISMISSED**.  The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 25, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge